### 9940

### SCOTT v. ATLANTIC COAST LINE R. CO.

#### (96 S. E. 305.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—"SNAP-SHOT"—"UNDESIRED EMERGENCY."—QUESTION FOR JURY.—In action against railroad for injuries to conductor of train, when thrown from top of car by a "snapshot," or an "undesired emergency" in air brakes, being a condition of such brakes which causes them to go into emergency when used for an ordinary stop, whether defect could develop between two stations *held* for jury.

2. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.—In action against railroad for injuries to conductor of train, when thrown from top of car by "undesired emergency" in air brake, whether train was sufficiently inspected at its starting point to discover any defects *held* for jury.

3. MASTER AND SERVANT—INJURIES TO SERVANT—DUTY OF INSPECTION.—Where railroad's engineer was in charge of engine and tender of train (conductor having charge only of rest of train), railroad was liable for injuries to conductor through "undesired emergency" in air brake of tender, though conductor undertook to inspect to discover "undesired emergency," but failed to do so, because his inspection went only from tender back.

4. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECT IN APPARATUS—"TERMINAL."—If there was defect in railroad locomotive's tender, and it required mechanical department to fix it, defect should have been eliminated when train reached place where the work could have been done, though such place was not a "terminal;" the rule requir-

ing the engineer to report defects in his engine to the mechanical department at "terminals."

5. Master and Servant—Safe Instrumentalities—Delegation of Duty.—A railroad's duty to provide reasonably safe instrumentalities for its conductor was unassignable, so that it made no legal difference whether failure to inspect a train to discover an "undesired emergency" in the air brake was the error of the master mechanic or of the engineer.

6. Appeal and Error — Harmless Error — Presumption — Actual Knowledge.—An error as to presumption is harmless when appellant proves it had actual knowledge, or knew such facts as would lead to actual knowledge.

7. Evidence—Parol Evidence Affecting Writing—Rule of Employer. —In a conductor's action for injuries against his railroad, the case not showing to whom a rule of the railroad applied, parol evidence, necessary for the purpose, was properly admitted to show to whom the rule did apply.

8. Appeal and Error—Review—Amount of Verdict.—The amount of the verdict in an action for personal injuries is a question for the trial Court.

9. Negligence — Comparative Negligence — Injuries to Servant — Instruction.—In conductor's action against his railroad for injuries, instruction that, if jury found plaintiff guilty of contributory negligence, they should diminish damages to extent negligence was attributable to him, adequately covered rule that under Federal statute negligent employee cannot recover full damages.

10. Master and Servant—Federal Employers' Liability Act.—Under the Federal Employers' Liability Act (U. S. Comp. St. 1916, secs. 8657-8665), a railroad was liable for injuries to its conductor caused by an "undesired emergency" in an air brake, if the brake was defective or the engineer's act was wilful.

Before Smith, J., Florence, Fall term, 1916. Affirmed.

Action by Otis K. Scott against the Atlantic Coast Line Railroad Company. From judgment for plaintiff, defendant appeals.

*Mr. F. L. Willcox,* for appellant, submits: *The case having been brought under the Federal law, defendant is entitled to the benefit of the results of the assumption by the*

*plaintiff of the risks incident to his employment, and of such contributory negligence as he may have been guilty of:* 223 U. S. 503; 58 L. Ed. 1070. *The failure of any appliance to work properly at any particular time constitutes no evidence of negligence:* 72 S. C. 398; 105 S. C. 102; 179 U. S. 659; 45 L. Ed. 361. *Negligence in suddenly stopping the locomotive with a jerk cannot be imputed to the engineer as the proximate cause of plaintiff's injury:* 55 S. C. 389; 33 S. E. 509; 77 S. C. 328. *It was error to charge the jury that if they should find that plaintiff was guilty of contributory negligence, it would be their duty to diminish the damages to the extent to which the negligence was attributable to him:* 237 U. S. 499; 59 L. Ed. 1069. *It was error to refuse to grant defendant a new trial:* 229 U. S. 265; 57 L. Ed. 1179; 223 U. S. 503; 58 L. Ed. 1070; 191 U. S. 64; 48 L. Ed. 96; 161 U. S. 451; 241 U. S. 229; 60 L. Ed. 970; 237 U. S. 499; 50 L. Ed. 1069.

*Messrs. J. W. Ragsdale* and *Whiting & Baker,* for respondent, cite: *As to the law of negligence in respect to defective appliances:* 103 S. C. 113; 87 S. C. 174; 105 S. C. 34; 58 L. Ed. 1070; 93 S. C. 74. *As to exceptions to Judge's charge:* 103 S. C. 113; 58 L. Ed. 863; 58 L. Ed. 1070; 241 U. S. 228; 68 L. Ed. 970. *As to motion for new trial:* 24 L. Ed. 749; 59 L. Ed. 1160; 58 L. Ed. —; 60 L. Ed. 979.

March 25, 1918.

The opinion of the Court was delivered by Mr. Justice Fraser.

This is an action for damages. The plaintiff was ordered, as conductor, to take a wreck train from Florence to Manning, to do some work at Manning. The train went from Florence, through Lynchburg, to Sumter, and thence to Manning. Lynchburg is about halfway between Florence

and Sumter. At Lynchburg the engineer discovered that there was a "snapshot" on the train. A snapshot is a condition of the air brakes that causes the brakes to go into emergency, when the brakes are put on for an ordinary stop. It is also called an "undesired emergency." The case shows that the emergency brake is the most powerful agency known to produce a sudden stop of a train. The case shows that the engineer discovered at Lynchburg that there was a snapshot on the train, but did not locate it until he reached Manning. He reported the snapshot to the conductor at Sumter. The conductor told the engineer to move off slowly, and he (the conductor) would inspect the train to locate the snapshot, and, if he could not find it, he would warn him ahead, and the train could proceed to Manning. The proper signal was given, and the train went to Manning. At Manning the engine and tender and one car left the remaining portion of the train on the main line and went into a sidetrack to move some cars that were standing there. The cars on the sidetrack were coupled up to the engine, tender and single car. The conductor went upon top of one of the cars on the sidetrack to give the signals. He gave the signal to come back, and then a signal for a slow stop. The engineer understood the signals and applied the brakes; they went into emergency; the train stopped suddenly; the car immediately in the rear of the conductor broke loose; the conductor was thrown to the ground, and his leg was broken at the ankle. It is claimed that this is a permanent injury. The case further shows, and that by the appellant's witnesses, that a snapshot is caused by a defective air brake; that, while the conductor is in general charge of the movements of the train, the engineer is in charge of the manipulation of the engine and tender, and it is his duty to make small repairs of the engine between terminals, and with that the conductor is not allowed to interfere, unless his assistance is requested by the engineer, and that in this instance the engineer did not call for his assistance.

I. At the conclusion of the testimony the appellant asked for a directed verdict, on the ground that there was no evidence of negligence.

A. The first point is that there is no evidence that a defective air brake was furnished at Florence. The defective air brake was located on the tender at Manning, and there was evidence that it could not develop between Florence and Augusta, and Augusta is further than Manning. This was denied, but that was a question for the jury. It did appear at Lynchburg, just a few miles from Florence. There was evidence as to the kind of inspection made at Florence, and also that this brake went into emergency twice in five trials, and that raised the question for the jury as to the sufficiency of the inspection at Florence.

B. Again, it is claimed that the conductor was in charge of the train and undertook to inspect it at Sumter, and, if there was a defect, it was his business to discover it, and, if he failed to discover it, it was his own fault, and the appellant is not liable. This position overlooks the uncontradicted testimony of the engineer (appellant's witness), that the engineer was in charge of the manipulation of the engine and tender, and that the man in charge of the train was responsible for the rest of the train. The uncontradicted testimony is that the snapshot was on the tender. There was no snapshot on the only car taken into the sidetrack, where the injury occurred, but on the tender. The conductor's inspection was from the tender back. It can make no difference what defects were overlooked in the rest of the train; the injury was caused by a defect in the air brakes on the tender, and that was not subject to the conductor's inspection, unless the engineer called for his assistance, and he did not call for it.

II. The next error to be considered is in calling Sumter a terminal. The rule requires an engineer to report at termi-

nals, to the mechanical department, defects in his engine. At Sumter the report was not made to the mechanical department. Appellant claims that, while Sumter is a terminal for trains that start from Sumter and end there, it is not a terminal for trains merely passing through Sumter, as this train did. There is no magic in the word "terminal." If there was a defect in the tender, and it required the mechanical department to fix it, the defect should have been eliminated when they arrived at a place where it could have been done. The case shows, from appellant's witness, and it is undisputed, that all that was required to make the engine reasonably safe was to shut off the air brake on the tender, and that was done at Manning. The duty to provide reasonably safe instrumentalities was an unassignable duty. The engineer, whose duty it was to inspect the tender, discovered the snapshot on the train at Lynchburg. There is no evidence that he attempted to locate it until after the accident. The tender could easily have been made safe, and was at Manning, and it makes no legal difference whether the failure to inspect was the error of the master mechanic or the engineer. An error as to presumption is harmless when appellant proves it had actual knowledge, or knew such facts as would lead to actual knowledge.

III. The next question is the allowance of parol evidence to explain a rule. The case does not show to whom the rule applied, and parol evidence was necessary to show to whom the rule did apply.

IV. Appellant says:

"If he had remained on the ground, and given signals to the engineer or fireman, manifestly he would not have been injured."

There was evidence that the signals could not have been seen from the ground. The weight was for the jury.

V. The amount of the verdict: It has been held time and again that that is a question for the trial Court.

VI. The next error complained of is: "That he should have charged that, where causal negligence is partly attributable to the employee and partly to the carrier, the employee shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to both."

His Honor charged: "If you find that plaintiff was guilty of contributory negligence, it would be your duty to diminish the damages to the extent to which the negligence was attributable to him."

There was no error here.

VIII. Appellant complains that his Honor refused to charge that there was no evidence of wilfulness on the part of the engineer. The brakes went on emergency. Appellant's witness said it was attributable to one of two causes, a defective air brake or wilfulness.

Appellant was liable under the Federal statute in either event, and there was no error here.

There are 12 exceptions, but we have considered those argued.

The judgment is affirmed.